IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JACQUELINE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00781-DGK |
| ) | |
| DENIS McDONOUGH, SECRETARY ) | |
| OF THE DEPARTMENT OF VETERANS ) | |
| AFFAIRS, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING SUMMARY JUDGMENT**

This is an employment discrimination case brought by Plaintiff Jacqueline Williams against Defendants Dennis McDonough, in his official capacity as Secretary of the Department of Veterans Affairs, and the United States of America.[1]

Now before the Court is Defendant's motion for summary judgment. ECF No. 21. Holding Defendant has demonstrated entitlement to summary judgment on all claims, the motion is GRANTED.

**Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under

---

[1] Defendant filed a separate motion to dismiss the United States as a party, ECF No. 22, arguing the United States is not a proper party in a Title VII case, *see* 42 U.S.C. § 2000e-16(c) (providing the proper defendant in Title VII action brought by a federal employee is "the head of the department, agency, or unit"). Plaintiff did not file an objection. Because the Court is granting Defendant's motion for summary judgment, this motion is DENIED AS MOOT.

the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

## Undisputed Material Facts

To resolve the motion, the Court must first determine the material undisputed facts.[2] Determining the material undisputed facts has been difficult given Plaintiff's briefing, which often relies on unsupported statements and incorrectly referenced exhibits. For instance, Plaintiff cites to Krystal Kemp's affidavit in support of the statement Plaintiff's supervisor, Avis Watson-McCloud, "was significantly younger than [Plaintiff]," yet Kemp's affidavit does not reference Watson-McCloud's age. *See* Pl.'s Resp. at 15, ECF No. 25; *see* Kemp's Aff., ECF No. 25-20.[3] Plaintiff also relies on Adrienne Curry's *unsigned and undated* affidavit for the contention Watson-

---

[2] The Court has limited these facts to those that are undisputed and material to the pending summary judgment motion. Excluded are legal conclusions, argument presented as fact, and proposed facts not properly supported by admissible evidence. The Court has also included inferences from undisputed material facts and facts not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). This includes all proposed material facts that Plaintiff improperly controverted by restating the same thing in different words or by adding irrelevant commentary. *See, e.g.*, Df.'s Proposed Fact No. 16, ECF No. 25 at 9 (restating the same situation in different words); Df.'s Proposed Fact No. 8, *id.* at 7 (discussing unrelated text messages after controverting statement concerning who reported the chemical spill).

[3] Plaintiff's exhibit numbers do not match the attachment numbers assigned by ECF. For instance, Plaintiff cites Kemp's affidavit as "Exhibit 16", but ECF shows this as attachment 20. For consistency, the Court references exhibits by their ECF numbers. As such, Kemp's affidavit is ECF No. 25-20.

2

McCloud texted Curry about intentionally trying to stress Plaintiff out so she would quit—an allegation central to Plaintiff's argument. *See* Curry's Aff., ECF No. 25-8. Not only is this allegation unsupported by the attached text, *see* ECF No. 25-9, but the Eighth Circuit has repeatedly held undated and unsigned affidavits are insufficient evidence to support a motion for summary judgment, *see Watson v. McDonough*, 996 F.3d 850, 854 n.3 (8th Cir. 2021) (refusing to consider an undated, unsigned affidavit submitted in support of plaintiff's discrimination case against the VA).[4]

Due to these issues, the Court spent significant time combing through the record to determine the material undisputed facts under Rule 56(c) and Local Rule 56.1(a). These undisputed material facts are as follows:

Beginning around July 2016, Plaintiff—an African American female over the age of 40—was employed as an Advanced Medical Support Assistant at the Kansas City Veterans Affairs Medical Center ("VA"). Plaintiff generally met the reasonable expectations of her job. Avis Watson-McCloud, also an African American female, was Plaintiff's first-line supervisor. Stan Utley was the VA's Chief Business Officer and John Reinert was his deputy.

On November 22, 2019, around 8:00 AM, Plaintiff and another employee reported that there had been a chemical spill on Plaintiff's desk. Plaintiff contends the chemical spill melted part of her computer and screen. Plaintiff reported the spill caused her lightheadedness, nausea, and vomiting, and being out the area did not alleviate her symptoms. The chemical spill was reported to a supervisor and environmental services. Plaintiff was seen by Jennifer Troutman, a

---

[4] Plaintiff's counsel here was also counsel in that case, so she should be familiar with this standard. Despite this, Plaintiff's counsel submitted two other improperly executed affidavits in this case. *See* Pl.'s Aff., ECF No. 25-21 (not dated); Kemp's Aff., ECF No. 25-20 (not dated). The Court will enter a show cause order based on this error, as well as the misrepresentations made in Plaintiff's filings, and Plaintiff's counsel's lack of diligence in prosecuting this case.

3

nurse practitioner working in the employee health department.

The parties dispute whether nurse practitioner Troutman cleared Plaintiff to return to work. Either way, Watson-McCloud found a different area for Plaintiff to work at for the rest of the day. Plaintiff worked until 12:30 PM, at which time she requested three hours of sick leave through the VATAS system. At some point, Plaintiff went to Watson-McCloud and told her that she was taking sick leave, which Watson-McCloud contested. The parties dispute whether a verbal altercation broke out between Plaintiff and Watson-McCloud at this time. Plaintiff ultimately left work and was charged as Absent Without Leave ("AWOL") for the rest of the day (totaling 3 hours). Plaintiff believes Watson-McCloud and other supervisors at the VA showed no concern for her health since they never came to see her or ask how she was feeling after the chemical spill.

In Fall 2019, the VA posted a vacancy announcement for the VA's secretary position. Plaintiff applied and was interviewed for the position. On or around February 14, 2020, Plaintiff was notified via email by USA Staffing that she was not selected for the position. Plaintiff speculates that Watson-McCloud gave her an unfavorable reference. Plaintiff does not know who was ultimately selected for the position.

In Spring 2020, Watson-McCloud proposed discipline for Plaintiff based on a number of incidents she catalogued in a submission to the ER/LR.[5] On February 10, 2020, John Reinert issued a proposed seven-day suspension to Plaintiff, which specified the following charges:

- "Failure to carry out supervisory instructions," after Plaintiff failed to submit a completed North Star Way report at the weekly huddle on five occasions.

- "Inappropriate Conduct," after Plaintiff engaged in a verbal altercation with her supervisor on November 20, 2019, and November 22, 2019.

---

[5] The parties do not define this term.

4

Case 4:21-cv-00781-DGK   Document 32   Filed 10/02/23   Page 4 of 14

- "Absence without leave," after Plaintiff failed to remain on duty for three hours on November 22, 2019.
- "Leaving your assigned duty location without proper permission," after Plaintiff left work on November 22, 2019, after a proper leave denial.

*See* Proposed Suspension, ECF No. 21-12. Plaintiff denies engaging in any of these behaviors.

Plaintiff was afforded the opportunity to respond to the charges made in the proposed suspension. On March 26, 2020, after considering the original charges and Plaintiff's written responses, Stan Utley upheld the factual allegation of misconduct but mitigated the proposed suspension from seven days to five days. The five-day suspension was enforced and carried out between April 6, 2020, and April 10, 2020.

Plaintiff filed two administrative claims with the VA between 2017 and 2020. On October 27, 2021, after receiving an unfavorable agency decision denying her claims, Plaintiff initiated the present lawsuit.

**Discussion**

As an initial matter, Plaintiff's briefing is just as difficult to comb through as her proposed uncontroverted facts. Many portions of her argument appear to be copied and pasted from other, unrelated documents or cases. For instance, one whole paragraph is copied and pasted from another one of Plaintiff's counsel's cases. *See* Pl.'s Resp. at 25 (referring to a "Ms. Gill" for the first time and discussing plaintiff's termination despite plaintiff never being terminated in this case—a paragraph copied from plaintiff's summary judgment briefing in *Gill v. McDonough*, 4:21-cv-00411-LMC (W.D. Mo. June 14, 2021)). Other portions of her argument reference new claims not raised in her complaint. *See id.* at 24 (referencing a hostile work environment based on gender for the first time in a concluding sentence). So, before addressing the merits of each count,

the Court must first determine what claims are properly before it.

### I. Plaintiff failed to establish color, sex, disability, and age-based claims.

Plaintiff's complaint includes three counts, all alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Those counts are discrimination based on race, age, and sex (Count I); hostile work environment based on race, age, color, disability, and sex (Count II); and retaliation (Count III). ECF No. 1.

Plaintiff did not raise color, sex, or disability-based claims with an Equal Employment Opportunity ("EEO") counselor, so she cannot raise them here. *See* Admin. Compls., ECF Nos. 21-5, 21-7; *see Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 949 (8th Cir. 2011) (requiring Title VII plaintiffs to exhaust administrative remedies before bringing civil claims). This leaves only Plaintiff's race and age-based claims.

But age is not a protected class under Title VII, *see* 42 U.S.C. § 2000e-16 (prohibiting "discrimination based on race, color, religion, sex, or national origin"), and Plaintiff did not bring claims under the Age Discrimination in Employment Act of 1967 ("ADEA"). So, to the extent Plaintiff asserts Title VII claims based on age, summary judgment is entered in favor of Defendant because Title VII does not cover such a claim. *See, e.g.*, *Enowmbitang v. Seagate Tech., Inc.*, 148 F.3d 970, 973 (8th Cir. 1998) ("A district court may properly grant summary judgment sua sponte and without prior notice if the losing party has failed to state a claim upon which relief may be granted.") (citation and internal quotation marks omitted).[6]

Accordingly, the Court finds that only the race-based claims under Counts I–III are

---

[6] Defendant disputes Plaintiff's age-based claims on other grounds. Namely, Defendant argues Plaintiff failed to exhaust this claim at the outset. *See* Df.'s Suggestions in Supp. at 9, ECF No. 21. Plaintiff responds by arguing she properly raised a "race plus age" claim, *see* Pl.'s Resp. at 20, despite never raising "race plus age" in her complaint nor citing caselaw supporting the existence of such a claim in the Eighth Circuit. *See* L.R. 7.0(a) (failing to cite "applicable law" in written motions to the Court is a violation of the local rules). Regardless, because Title VII does not recognize age as a protected class, this point is moot.

properly before it.

## II. Defendant is entitled to summary judgment on Plaintiff's race discrimination claim.

Plaintiff has not presented any direct evidence of discrimination, so the familiar *McDonnell Douglas* burden-shifting framework applies to each claim. *See Watson v. McDonough*, 996 F.3d 850, 854 (8th Cir. 2021). Under this framework, Plaintiff must first establish a prima facie case of discrimination. *Id.* If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate "a legitimate, nondiscriminatory reason for its decision." *Id.* (quotation omitted). If Defendant presents such evidence, the burden shifts back to Plaintiff "to prove that the proffered reason was pretext for discrimination." *Id.* (internal quotation marks omitted).

Central to establishing a prima facie case of discrimination is Plaintiff's ability to demonstrate she suffered an adverse employment action. As best the Court can tell, Plaintiff alleges she suffered the following adverse employment actions: (1) she was denied leave after the chemical spill; (2) she received a five-day suspension; (3) she was not hired for the secretary position; and (4) she was given more work and poorer work conditions compared to others.[7]

Failure to hire/promote and the five-day suspension are adverse employment actions. *See id.* at 855 (recognizing failure to promote can constitute an adverse employment action); *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006) (recognizing suspension without pay is an adverse employment action). But the other actions noted above are nothing more than "[m]inor changes in duties or working conditions," albeit "unpalatable or unwelcome ones." *See Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926–27 (8th Cir. 2007) (altered and reassigned duties, poor performance evaluations, being denied training, and not being welcomed back upon return or

---

[7] At no point does Plaintiff specify who these other individuals are.

provided with the tools to be productive were not adverse actions); *Watson*, 996 F.3d at 855 (inadequate training, assignment of additional work, performance reviews, and written counseling were not adverse actions). Plaintiff cites no caselaw suggesting otherwise.

> **A.     Plaintiff cannot establish a prima facie case of race discrimination for failure to hire.**

As articulated by the Eighth Circuit, to state a prima facie case of race discrimination in the hiring context, Plaintiff must prove: (1) "[she] is a member of a protected group; [(2) she] applied for an available position; [(3) she] was qualified for the role; [(4) she] was not hired; and [(5)] similarly situated individuals, not part of the protected group, were promoted instead." *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019). Here, Plaintiff cannot establish the fifth element because she does not know who ultimately got the secretary position.[8] Thus, this claim fails, leaving only Plaintiff's five-day suspension claim.

> **B.     Plaintiff's suspension claim cannot survive summary judgment.**
>
> **1.     Defendants demonstrated a legitimate nondiscriminatory reason.**

Even assuming Plaintiff could prove the prima facie elements of race discrimination, Defendant articulated legitimate nondiscriminatory reasons for suspending Plaintiff. These reasons include that Plaintiff failed to carry out supervisory instructions on numerous occasions, engaged in inappropriate conduct twice, and left work without permission. *See McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (violating company policy is a legitimate, nondiscriminatory reason); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (same); *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003) (insubordination is a

---

[8] Plaintiff also has not put forth any evidence raising an inference of discrimination. *See Gipson v. Dassault Falcon Jet Corp.*, 983 F.3d 377, 381 n.2 (8th Cir. 2020) (noting certain circumstances where a plaintiff can establish a prima facie case of discrimination despite the selected employee being a member of the same protected group). The only evidence Plaintiff cites is her own speculation that Watson-McCloud gave her an unfavorable reference. This is not enough to give rise to an inference of discrimination. *See Mann*, 497 F.3d at 825.

legitimate, nondiscriminatory reason); *see also King v. Guardian ad Litem Bd.*, 39 F.4th 979, 986 (8th Cir. 2022) ("[A]n employer's belief that the employee committed misconduct is a legitimate, non-discriminatory reason for adverse action." (quoting *Richey v. City of Indep.*, 540 F.3d 779, 784 (8th Cir. 2008))). Thus, the analysis shifts back to Plaintiff to demonstrate pretext.

### 2. Plaintiff has not shown pretext.

Plaintiff argues Defendant's reasons are pretextual because Watson-McCloud made up the grounds for her suspension based on her "animus against older black woman"; and Watson-McCloud, who is also African American, relied on racist tropes, like stereotyping Plaintiff as an "angry black female", to get her suspended "without any kind of investigation." Pl.'s Resp. at 26–27. Plaintiff also insinuates she was terminated, but that is patently false. In fact, Plaintiff claims she still works for the VA, albeit in a different role. *See id.* at 16.

To establish pretext, Plaintiff must "present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *McNary*, 535 F.3d at 769 (quotation omitted); *see Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) ("To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has proffered a phony excuse." (internal quotation marks omitted)); *see also Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) ("This burden will not be met by simply showing that the reason advanced by the employer was false[.]" (quotation omitted)). The avenues for proving pretext include demonstrating that the employer's explanation "has no basis in fact," that the employer "shifted its explanation," or that "the employer deviated from [its] policies." *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1017 (8th Cir. 2017).

Plaintiff has not raised a genuine dispute as to whether Defendant's reasons were pretext for discrimination. First, Plaintiff admits she was provided an opportunity to respond to the charges made in the proposed suspension, and so she was not suspended "without any kind of investigation" like she now claims. Second, Plaintiff points to no specific factual evidence supporting her claims but instead relies on her own subjective belief that Watson-McCloud submitted false accusations to get her suspended because she was black. It is well established that "[c]onclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment." *Millard Gutter Co. v. Cont'l Cas. Co.*, 9 F.4th 711, 712 n.2 (8th Cir. 2021) (quoting *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998)); *see Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."); *see also Said v. Mayo Clinic*, 44 F.4th 1142, 1150 (8th Cir. 2022) (finding speculation insufficient to establish pretext); *Mann*, 497 F.3d at 825.

Plaintiff's reliance on her union representative, Krystal Kemp's, affidavit is equally as unpersuasive. Kemp's affidavit does nothing more than conclude Watson-McCloud had a history and pattern of discriminating against older black women without providing specifics. *See Millard Gutter Co.*, 9 F.4th at 712 n.2. Kemp's claim that she "represented another individual who was also approved for leave but Ms. Watson[-]McCloud gave her AWOL" is too vague and conclusory to create a genuine issue of material fact. Kemp's Aff., ECF No. 25-20. Who was this individual and when did this happen? *Cf. Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938–39 (8th Cir. 2019) (failing to demonstrate pretext where plaintiff could not show similarly situated employees were treated differently).

Plaintiff has not demonstrated Defendant's explanation "has no basis in fact," that Defendant "shifted its explanation," or that Defendant "deviated from [its] policies." *Sieden*, 846 F.3d at 1017. At best, Plaintiff argues her suspension was unfair, but this alone is insufficient under Title VII. *See Beasley*, 933 F.3d at 939; *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 977 (8th Cir. 2012) (Congress has "not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."). Accordingly, Defendant is entitled to summary judgment on this claim.

**III.     Defendant is entitled to summary judgment on Plaintiff's retaliation claim.**

Plaintiff also alleges the adverse actions taken against her were motivated by Plaintiff's filing of her EEO complaints. Plaintiff cites only one case in support, although in that case the Eighth Circuit upheld summary judgment in favor of the employer. *See Gibson v. Geithner*, 776 F.3d 536 (8th Cir. 2015). Nonetheless, Plaintiff's claim fails because she has not presented a prima facie case of retaliation.

To establish a prima facie case of retaliation, [Plaintiff] must show that: (1) '[s]he engaged in protected conduct, (2) [s]he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct.'" *Watson*, 996 F.3d at 856 (quotation omitted). Neither party disputes filing an administrative complaint constitutes protected activity.

Without delving into the parties' exhaustion issues, Plaintiff fails to show how her suspension was causally related to her complaints with the EEO. To establish this nexus, Plaintiff points to testimony wherein Watson-McCloud allegedly admitted "the adverse action was causally linked to the protected conduct[.]" *See* Pl.'s Resp. at 27. That is a disingenuous and borderline frivolous interpretation of Watson-McCloud's testimony. In the testimony Plaintiff refers to,

11

Watson McCloud simply acknowledged Plaintiff files an administrative complaint against her every two years or so whenever she tries to hold Plaintiff accountable for completing her clerical duties. *See* Admin. Report at 75, ECF No. 25-2. That statement does not establish causation. Plaintiff then claims she "had no failures in performance" because "[t]hose who worked with her were extremely pleased with her performance." Pl.'s Resp. at 28. The Court does not see how a handful of emails from various coworkers praising her work generally proves that she was retaliated against for protected activity. And if this is Plaintiff's attempt to demonstrate pretext for her suspension, it is unavailing. *See Said*, 44 F.4th at 1150 (finding "employee's technical competency does not shield him from discipline for misconduct"); *see also King*, 39 F.4th at 987 ([E]vidence of a strong employment history will not alone create a genuine issue of fact regarding pretext and discrimination." (quotation omitted)); *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1020 (8th Cir. 2005). Accordingly, Defendant is entitled to summary judgment on this claim.

### IV. Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

Lastly, Plaintiff alleges Watson-McCloud created a hostile work environment by refusing to grant Plaintiff's leave requests during the 2019 holidays, denying Plaintiff's request to help with disaster relief in Florida, denying Plaintiff's request to work longer shifts or change shifts (while approving it for others), making Plaintiff recite reports in the dark, giving Plaintiff more work, and fabricating evidence to suspend Plaintiff. Defendant argues Plaintiff cannot satisfy the prima facie elements as to this claim.

To establish a prima facie case of hostile work environment, Plaintiff must show that: "(1) she is a member of the class of people protected by [Title VII], (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class, and (4) the

harassment was severe enough to affect the terms, conditions, or privileges of her employment." *Watson*, 996 F.3d at 856 (quotation omitted). "The standard for demonstrating a hostile work environment under Title VII is demanding[.]" *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 823 (8th Cir. 2017) (internal quotation marks omitted).

Plaintiff has not linked any of Defendant's allegedly harassing actions to her race, nor cited any caselaw supporting her position. In fact, Plaintiff simply restates the actions Watson-McCloud took against her and concludes those actions were taken because she was black. *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (finding plaintiff failed to show sufficient evidence of causation where "[s]he simply recit[ed] a list of actions [defendants] took against her, and claim[ed] they were taken because she is a woman"); *see also Watson*, 996 F.3d at 856. While she points to her and Kemp's affidavits in support, as stated earlier, both affidavits merely speculate Watson-McCloud harassed Plaintiff based on her race. *See Palesch v. Missouri Comm'n on Hum. Rts.*, 233 F.3d 560, 567–68 (8th Cir. 2000) (reliance on speculation and conjecture is insufficient); *see also Bell v. Baptist Health*, 60 F.4th 1198, 1205 (8th Cir. 2023) (granting summary judgment where plaintiff presented no evidence besides her own allegations); *Genosky v. Minnesota*, 244 F.3d 989, 993 (8th Cir. 2001).

Alternatively, even if the Court assumes Plaintiff linked the alleged harassment to her race, the conduct is not severe enough to support a hostile work environment claim. This fourth element "presents a high threshold" wherein Plaintiff "must prove that the environment was both subjectively and objectively offensive." *Liles*, 851 F.3d at 823 (internal quotation marks omitted) (clarifying the conduct must be severe and pervasive, "not merely rude or unpleasant").

The sporadic incidents Plaintiff complains of do not meet the "high threshold" needed to prevail. *See id*. The conduct here is equivalent to—or less severe than—the conduct in cases

13

where the Eighth Circuit has found no hostile work environment. *See, e.g.*, *Miller v. Coca-Cola Enterprises, Inc.*, 178 F. App'x 583, 584–85 (8th Cir. 2006); *Stone v. McGraw Hill Fin., Inc.*, 856 F.3d 1168, 1175–76 (8th Cir. 2017); *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013).

Accordingly, Defendant is entitled to summary judgment on this claim.

## Conclusion

For the reasons discussed above, Defendant's motion for summary judgment is GRANTED. Summary judgment is entered in Defendant's favor on all of Plaintiff's claims.

**IT IS SO ORDERED.**

Date: October 2, 2023 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT