IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JACQUELINE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-00781-CV-W-DGK |
| ) | |
| DENIS McDONOUGH, SECRETARY OF THE ) | |
| DEPARTMENT OF VETERANS AFFAIRS, and ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

# DEFENDANTS' RESPONSE TO THE COURT'S
# ORDER TO SHOW CAUSE

Pursuant to the Court's ORDER DIRECTING PLAINTIFF'S COUNSEL TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE ISSUED [Doc. 34], defendants Denis McDonough, sued in his official capacity as the Secretary of the Department of Veterans Affairs ("VA"), and the United States of America, submit the following response in compliance with said ORDER.

## I. Overview

On October 27, 2021, plaintiff Jacqueline Williams ("Williams") filed a COMPLAINT AND JURY DEMAND alleging employment discrimination claims arising from her work with the VA. Doc. 1. The COMPLAINT named two defendants – the Secretary of the VA and the United States. Doc. 1. On October 2, 2023, the Court granted summary judgment to both defendants on all claims. Doc. 32. Subsequently, on November 7, 2023, the Court issued its aforementioned order to show cause as to why sanctions should not be issued to plaintiff's counsel Rebecca Randles. In its ORDER, the Court – noting that was "concerned that [Ms. Randles'] conduct may warrant the imposition of sanctions" – directed Ms. Randles to submit a pleading addressing:

1

(1)  reliance on improperly executed affidavits,

(2)  potential misrepresentations, and

(3)  potential vexatious and frivolous briefing tactics and pleadings.

Doc. 34. Thereafter, the Court ordered the government to file a pleading "responding to Ms. Randles' positions, providing additional examples of how her filings violate [Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent authority], and outlining the expenses and/or attorneys' fees that it incurred from this potential misconduct." Doc. 34. On November 28, 2023, Ms. Randles filed her RESPONSE. Doc. 35. This brief ensues.[1]

## A. Reliance on improperly executed affidavits

In her RESPONSE,[2] Ms. Randles identifies two instances[3] wherein she intentionally filed an unsigned affidavit as part of a response to a summary judgment motion – the present case and *Watson v. Wilkie*, Case No. 4:17-00192-CV-RK. In both of these identified cases, Ms. Randles represents that the witnesses initially cooperated in the preparation of an affidavit but then "ghosted" her without signing the alleged final version of the affidavit. In both instances, Ms. Randles states that she made a <u>deliberate decision</u> to file an unsigned affidavit with the Court.[4]

---

[1] As Ms. Randles notes in her RESPONSE, she "secondarily" has handled employment discrimination cases for many years. Ms. Randles' discrimination cases have included considerable litigation with the federal government. Since 2017, Ms. Randles has filed nineteen employment discrimination cases just against the VA. By in large, the foregoing response by the government is based on the experience of attorneys in the Civil Division of the United States Attorney's office for the Western District of Missouri in defending those lawsuits.

[2] To comply with page limitations, this response does not address Ms. Randles' brief point-by-point but focuses on litigation tactics that Ms. Randles herself calls intentional.

[3] The undersigned is also aware of at least one other case where an unsworn declaration was submitted by Ms. Randles in response to a summary judgment motion. Doc. 36, at 1-2, *Hill v. McDonough*, Case No. 4:21-cv-00466-RK (W.D. Mo.) ["Attachment A" hereto].

[4] With regard to two other affidavits, both undated, filed with the Court in the present case – Krystal Kemp and plaintiff Jacqueline Williams – Ms. Randles indicates that "the failure to date them was an oversight."

2

As set out in her RESPONSE, relying on a district court decision in *Moss v. Texarkana Arkansas Sch. Dist.*, 2016 WL 7379016, slip op. (W.D. Ark. Dec. 20, 2016), Ms. Randles elected to file "an unsigned affidavit [and] then seek[] the Court's permission to file the signed declaration expecting it to be received the following day." RESPONSE, at 3. The problem – in both cases identified by Ms. Randles – is that there is no record of her: (1) acknowledging the affidavit's deficiencies upon her initial filing of the pleading with the district court, or (2) subsequently seeking leave to file a signed affidavit in place of the original unsigned affidavit. Moreover, the *Moss* decision cited by Ms. Randles does not endorse her litigation "strategy."

In *Moss*, a defendant in a Title VII case moved to strike the plaintiff's own affidavit which was attached to the plaintiff's opposition to a motion for summary judgment. *Id*. at *1-2. In part, the defendant argued that the affidavit was "unsigned, undated, and not notarized." *Id*. at *2. The district court agreed that the exhibit did "not meet the requirements for a valid affidavit" nor did it "qualify as an unsworn declaration pursuant to 28 U.S.C. § 1746." *Id*.

In response to the motion to strike, the plaintiff "acknowledge[d] that [the exhibit], as filed, [was] unsigned and undated,[5] and ask[ed] the Court for permission to file and substitute a 'signed copy of her [a]ffidavit.'" *Id*. To that end, the district court noted that generally "a district court has broad discretion in permitting a movant to supplement [an] affidavit and cure its defects." *Id*. (*quoting Painters Dist. Council No. 2 v. Anthony's Painting, LLC*, 2011 WL 4369283, at *1 (E.D. Mo. Sept. 19, 2011)). Ultimately, the court concluded:

> The Court would have no issue with allowing a substitution if . . . Plaintiff's tendered revised affidavit was identical to her original affidavit in all aspects except the corrections to the signature and notarization deficiencies. However, certain language in Plaintiff's revised affidavit is substantially different from that in the original affidavit. . . . The Court will not permit Plaintiff to alter the

---

[5] In her brief opposing the motion to strike, the plaintiff in *Moss* explained that her unsigned affidavit was filed accidently and "by oversight." Doc. 59, *Moss v. v. Texarkana Arkansas Sch. Dist.*, 4:14-cv-04157-SOH (WD. Ark Sept. 6, 2016).

> substance of her original affidavit. . . . However, Plaintiff will be permitted to file a new affidavit in compliance with federal affidavit requirements, but only if there is no substantive alteration from the original affidavit.

*Id*. at *3. Nothing in *Moss* endorsed a strategy of deliberately filing an unsigned affidavit.

## B. Potential vexatious and frivolous briefing tactics and pleadings

In its ORDER, the Court expressed concerns that Ms. Randles, on behalf of Williams, had controverted an abundance of the defendant's proposed material facts by either restating the same thing in different words or by adding irrelevant commentary. As exemplars, the Court cited to Proposed Fact Nos. 8 and 16 from the defendant's motion for summary judgment.

In her RESPONSE, Ms. Randles justifies the response to Proposed Fact No. 16 by arguing that the proposed fact "implies that Ms. Williams was whining because her supervisor did not come to see how she was feeling." Doc. 35, at 6. Ms. Randles essentially suggests that the undersigned counsel for the VA worded the proposed fact in an unfair or misleading manner. The accusation is absolutely false and is a perfect illustration of a litigation tactic that only increases the burden on the Court and opposing parties without furthering any search for a just result. In Proposed Fact No. 16, the VA submitted:

> 16. Williams believes that Ms. Watson-McCloud and other supervisors at the VA showed no concern for her health because they never came over to see her or ask how she was feeling. Ex. A, at 3.

The support for this proposed fact is found in paragraphs 17 and 19 on page 3 of Williams' own affidavit:

> 17. When were you told to "go back to work" and why? When I was in Employee Health seeing the Nurse about me feeling sick and Exposed to some kind of Chemical Spill. <u>I was sitting right by the Nurse when she called Avis Watson-McCloud and thats when I heard my Supervisor through the phone telling the nurse for me to go work on the 3rd Floor, she didnt even ask the nurse how I was feeling</u>.

> . . . .
>
> 19. How did management not "show concern for your health"? <u>By not ever asking me how I was feeling and by not coming to see about me when I mention to her about the Exposed Chemical Spill All over my Desk</u>.

Doc. 25, Ex. A (*emphasis added*). The VA did not "imply" anything, it merely quoted the <u>actual words used by Williams herself</u>.

Notwithstanding the fact that the VA quoted Williams, in her ensuing OPPOSING SUGGESTIONS, Williams purported to controvert the fact by merely restating the fact alleged by the VA:

> Controverted. Plaintiff believes they showed no concern for her health as Watson-McCloud did not even ask how she was when the nurse called; she just gave her a different workplace for the afternoon. Watson-McCloud took no steps to establish Ms. Williams' condition. [Ex. 3, Williams Aff].

As the Court noted, nothing about Williams' response "controverts" the VA's proposed fact.

But more disturbing is Ms. Randles' statement that she "has been using this method of controverting facts for many years." RESPONSE, at 6. She further claims that "this method" has been sustained as an appropriate method, citing to *Doherty v. Prudential Signature Real Est.*, 2006 WL 8438267, slip op. (W.D. Mo. May 23, 2006). The argument is wholly frivolous and *Doherty* utterly inapposite.

In *Doherty*, the defendant alleged the plaintiff was denied a promotion based a number of financial allegations, including the supposed uncontroverted fact that the defendant's company did not meet its budgeted net operating income ("NOI") goal for several months. *Id*. at *4. In response to a proposed fact to this effect in a summary judgment motion, the plaintiff "assert[ed] that this financial information is 'controverted as misleading.'" *Id*. To that end, the plaintiff <u>specifically</u> pointed out that:

- She had no control over how budgeted NOI was determined,

- Even though the company failed to meet budgeted NOI for the months of May, June, and July 2002, the year-to-date NOI was positive and exceeded the expectations of the defendant,

- With falling monthly NOI, a positive year-to-date NOI was not sustainable,

- She attributed the falling monthly NOI and corresponding decline in year-to-date NOI to rising utility costs, taxes and insurance expenses that were beyond her control, and

- She claimed that "market conditions," demands that she hire and train a new leasing staff, and the non-competitive pricing of apartments caused declines in revenue that resulted in the shortfall of actual NOI to budged NOI.

*Id*. Based on these detailed matters raised by the plaintiff, the district court concluded:

> The parties do not dispute that actual NOI failed to meet budgeted NOI for the seven months preceding [the plaintiff's] application for promotion to the Regional Property Supervisor position. However, the parties clearly dispute why [the company] failed to meet budgeted NOI and whether [the plaintiff] was responsible for [the company's] failure to meet budgeted NOI. [The plaintiff] has presented sufficient facts from which a reasonable jury could conclude that [the company's] budget shortfall was due to factors beyond her control and, therefore, she was qualified for the position of Regional Property Supervisor.

*Id*. at \*5.

In *Doherty*, the plaintiff properly controverted a fact as misleading by pointing to specific <u>contrary</u> evidence in the summary judgment record that demonstrated the fact alleged was not the end of the story and that there was more to be considered for purposes of deciding the summary judgment motion. By stark contrast, in this case, Williams merely reaffirmed the proposed fact alleged by the VA. This is not a proper "contravention." *Cf. Patacca v. CSC Holdings, LLC*, 2019 WL 1676001, op. at \*10 (E.D.N.Y. Apr. 17, 2019) ("[W]hile asserting a dispute, Plaintiff merely proceeds to reiterate Defendants' material fact, which must be deemed admitted since a reiteration is no more than repeating that which has been said, and not controverting it.");

6

*Wallace v. Georgia Power Co.*, 2017 WL 4418670, op. at *7 n.32 (N.D. Ga. May 3, 2017), *report and recommendation adopted*, 2017 WL 4422355 (N.D. Ga. June 26, 2017) ("Although plaintiff disputes the above fact, he actually just restates the testimony cited by defendant and fails to controvert it."); *Perez v. Saint John's Sch.*, 814 F. Supp.2d 102, 110 (D.P.R. 2011) ("Rather than pointing to record evidence which controverts these uncontested facts, Plaintiff merely restates Defendant's proposed facts in different language."); *Williams v. Chambers*, 2010 WL 520709, op. at *3 n.4 (E.D. Mo. Feb. 5, 2010) ("Plaintiff's facts which merely repeat Defendants' facts obviously cannot be 'controverted facts.'"). The fact that Ms. Randles' RESPONSE fails to acknowledge that there is a meaningful difference between her response to Proposed fact No. 16 and the situation in *Doherty* is concerning.

With regard to Proposed Fact No. 8, Ms. Randles justifies her contravention of the statement that "Williams and another employee reported that there had been some kind of chemical spill (a cleaning solution or oil) on Williams' desk" by claiming that the VA supervisor's affidavit to this effect was "based on double hearsay – someone told Ms. Watson-McCloud that it was oil or cleaning solution." A review of the subject affidavit reveals that the supervisor testified:

> Ms. Williams and another one of her previous co-workers stated
> that it was a cleaning solution or an oil in the work area.

Doc. 25, Ex. B (*emphasis added*). There is no double hearsay.[6] It is a basic maxim of evidence law that admissions by a plaintiff are not hearsay under FED. R. EVID. 801(d)(2)(A), which provides that a statement is not hearsay when it is offered against an opposing party and was made by the opposing party.

---

[6] While the statement is in an affidavit which would not itself be admissible at trial, under FED. R. CIV. P. 56(c)(2), evidence used for summary judgment need only be a matter that could be presented in a form that would be admissible in evidence. In this case, the supervisor could testify at trial as to Williams' statement without any valid hearsay objection.

## C. Other sanctions or reprimands

In her RESPONSE, Ms. Randles informed the Court that she has never been reprimanded or sanctioned by a court. Doc. 35, at 10. It is assumed that Ms. Randles has read the Court's query rather narrowly. To that end, the undersigned is not aware of any <u>formal</u> sanctions reprimands (*i.e.*, actions issued by a state bar association) involving Ms. Randles. However, in all candor, the undersigned is aware of informal reprimands and sanctions from judicial bodies addressing some of the same issues raised in the Court's ORDER, including:

(1) In a 2023 summary judgment order in *Hill v. McDonough*, the district court (Judge Ketchmark) effectively struck an unsigned and undated affidavit *sua sponte*. In addition to the issue of the affidavit, the court's order (citing five specific examples) also noted that "many of Plaintiff's proffered facts lack accurate citation to the summary judgment record (i.e., are not supported by the record cited), mischaracterize the cited record, or are arguments presented as facts." Doc. 36, at 1-2, 1n.1, *Hill v. McDonough*, Case No. 4:21-cv-00466-RK (W.D. Mo.) ["Attachment A" hereto].

(2) Also earlier this year, in a case where Ms. Randles represented the plaintiff, a district court (Judge Perry) – after a case had been removed to federal court for a second time – noted that the first case had been "dismissed without prejudice . . ., after plaintiff repeatedly failed to timely comply with the orders of this Court and the Local and Federal Rules of Civil Procedure and prosecute his case." *Hornbeck v. Archdiocese of St. Louis*, 2023 WL 4998855, at *1 (E.D. Mo. Aug. 4, 2023) (referencing the prior case, No. 4:22-CV-345-CDP) ["Attachment B" hereto].

(3) In 2022, the EEOC entered an order refusing a request from Ms. Randles (and Danny Thomas, co-counsel herein) to certify a class action with one of Ms. Randles' clients serving as class representative, finding that "[t]he facts readily apparent in the instant case reveal a disturbing pattern by the Class Representatives of failing to meet deadlines established by the federal courts and the EEOC Administrative Judge, asking for extensions, and subsequently failing to meet the extended deadlines" and additionally noting that "the EEOC Saint Louis District Office has dismissed the hearing requests and ordered final agency decisions in several cases over the years where filing deadlines were not met by federal sector complainants represented by Class Representative Randles." *Lee v. McDonough*, Case No. 560-2021-00093X (EEOC Sept. 13, 2022) ["Attachment C" hereto].

(4)  In another case in 2022, Ms. Randles failed to timely respond to a motion to dismiss leading the district court (Judge Teeter) to find that the "failure to timely respond to the motion to dismiss stem[med] from a lack of diligence rather than excusable neglect," and thus the court took up the motion to dismiss without the benefit of any briefing for the plaintiff. Doc. 27, *Willard v. Mayorkas*, 2:21-cv-2538-HLT-GEB (D. Kan) ["Attachment D" hereto]; Doc. 33, *Willard v. Mayorkas*, 2:21-cv-2538-HLT-GEB (D. Kan) ["Attachment E" hereto].

(5)  In 2019, in ruling on a motion for summary judgment in a case where Ms. Randles represented the plaintiff, the district court (Judge Bough) began the order by noting:

> As a preliminary matter, this Court notes that Plaintiff's briefing on this summary judgment motion is disjointed and difficult to follow. Given the difficult journey throughout the litigation, that is not surprising. This Court spent considerable judicial resources to make sense of Plaintiff's pleadings and to research the relevant case law. That is not the job of the Court.

*K.J. as Next Friend for K.D. v. St. Joseph Sch. Dist.*, 2019 WL 13259103, op. at *1 (W.D. Mo. Nov. 21, 2019) ["Attachment F" hereto].

## D.  Miscellaneous matters

Finally (and briefly), the undersigned points to two regular and deliberate[7] practices of Ms. Randles that unnecessarily complicate and prolong employment discrimination litigation.

First, Ms. Randles repeatedly names the "United States" as an additional party-defendant in federal employment litigation cases. This practice requires the government to file a motion to dismiss. When confronted with such a motion, Ms. Randles either accedes to the dismissal or ignores the motion until a district court either dismisses the United States or enters a show cause order (at which time, Ms. Randles accedes to the dismissal). In no case has Ms. Randles ever sought to justify a legal basis for naming the United States as a separate party-defendant.

---

[7]  The Court noted in its ORDER the confusion that often arises when Ms. Randles states in a pleading that all of her clients' claims arise under Title VII (when often there are claims under the ADEA or the Rehabilitation Act or the like) and when Ms. Randles clearly "cuts and pastes" from other complaints. The undersigned assumes that these are examples of oversight and human error and not deliberate obfuscation.

9

Secondly, Ms. Randles often files the <u>entire</u> administrative report of investigation as an exhibit in response to a summary judgment motion. This practice complicates citation to the record when Ms. Randles proposes facts and places into the summary judgment record thousands of irrelevant pages of documents (often leading to PII becoming a part of the record). Moreover, the practice is at odds with the Court's own rules. W.D. Mo. Loc. R 56.1(d) ("If a party's suggestions refer to facts contained in another document, such as a deposition, interrogatory answer, or admission, the party must attach a copy of <u>the relevant excerpt</u> [*emphasis added*]").

### E.  Expenses and attorneys' fees

Associating attorneys' fees and expenses to any particular pleading practice or litigation tactic is difficult in any case. With the federal government in employment discrimination litigation, the problem is more pronounced. Inasmuch as the United States Attorney's office neither bills clients nor is eligible for an award of attorneys' fees as a prevailing party, it is not the practice of Civil AUSAs to keep the type of time records that would be needed to respond to the Court's inquiry with regard to past events. However, if directed by the Court, the United States Attorney's office could start making an account of time and expenses related to the conduct identified by the Court in its ORDER.

Respectfully submitted,

Teresa A. Moore
United States Attorney

By    */s/ Jeffrey P. Ray*
Jeffrey P. Ray, Missouri Bar No. 35632
Deputy United States Attorney

Charles Evans Whittaker Courthouse
400 East Ninth Street, Fifth Floor
Kansas City, MO 64106
jeffrey.ray@usdoj.gov

ATTORNEYS FOR DEFENDANTS